UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

EDDIE JOHNSON,

                        Plaintiff,

    -against-

                                05 Civ. 161 (CSH)

HORIZON LINES, LLC, *in personam* and         <u>MEMORANDUM OPINION</u>
HORIZON CONSUMER, her gear, tackle,         <u>AND ORDER</u>
equipment, *in rem*,

                    Defendants.

----------------------------------------------------------------------x

<u>HAIGHT, Senior District Judge</u>:

      This is an action for personal injury suffered by a seaman on a United States flag, Coast Guard inspected ocean-going container ship. Plaintiff sues the vessel's owner *in personam* and the vessel *in rem.* Plaintiff alleges negligence under the Jones Act, 46 U.S.C. § 688, and unseaworthiness under the general maritime law. Trial is scheduled to begin on November 5, 2007. Plaintiff now moves for partial summary judgment on liability, based on the contention that the defendant shipowner's violations of statutory regulations caused or contributed to his injury. Those violations, plaintiff contends, entitle him to partial summary judgments that defendant was negligent and the vessel unseaworthy as a matter of law, and that defendant is precluded from asserting a defense of comparative negligence. Plaintiff's motion follows extensive discovery. Defendant opposes the motion. For the reasons that follow, plaintiff's motion is denied.

## I. BACKGROUND

      In May 2004, plaintiff Eddie Johnson was a seaman and member of the crew of the M/V HORIZON CONSUMER, the defendant *in rem*. The defendant *in personam*, Horizon Lines LLC.

("Horizon Lines"), was the owner *pro hac vice* and operator of the HORIZON CONSUMER.

Johnson was an electrician and a member of the vessel's engine department. On May 27, 2004, the HORIZON CONSUMER was moored to a pier in the port of Honolulu, conducting cargo operations. Reefer (that is to say, refrigerated) containers were stowed in two tiers on the main deck. In the early morning hours of May 27, Johnson was engaged in unplugging and stowing electric cables used for the refrigeration of reefer containers stowed in way of the number 7 and 8 hatches. These cables connect the reefer containers to the ship's main power system. Preparatory to discharging a reefer container from the vessel to the pier, an electrician (such as Johnson) must unplug the cable, coil it up, and stow it in an area near the container, awaiting the loading of the next refrigerated containerized cargo.

On this occasion, reefer containers on top of the numbers 7 and 8 hatches were stowed in two tiers. The lower tier of containers rested on the main deck. The second tier of containers rested on the tops of the first tier containers. To reach the cables on the second tier containers, Johnson had to use a ladder, which he placed in the deck space between the 7 and 8 hatch coamings. That space also contained what Horizon Line's Incident Investigation Report, Pl. Ex. B, describes as "[a]n approximately 32" by 32" square girder box hatch cover providing access to the tunnel below."

At about 1:00 a.m., Johnson placed the ladder on the deck and climbed up to unplug cables on second-tier reefer containers. Whether these containers were stowed on top of the 7 or the 8 hatch is not clear from the present record, but it is not material to the resolution of this motion. Johnson unplugged the cable on a second-tier container, stowed it away, and started down the ladder to the main deck. He testified at his deposition: "I was coming down the ladder and I was pretty much all the way down the ladder and the next thing I know I was trying to get up." Pl. Ex. L, Tr. 137. The

2

place from which Johnson was trying to arise was the steel deck of a tunnel space some 12 to 14 feet below the main deck.  The Horizon Lines Injury Report, Pl. Ex. A, gives the time of the accident as "0106" (1:06 a.m.) on May 27.

It is clear from the evidence that Johnson fell from the bottom or near the bottom of the ladder through the 32" square hatch and into the tunnel space below, suffering the injuries of which he complains.  Johnson fell down the hatch because the hatch was open.  Its cover was not in place. Johnson seems to argue that the hatch was partially covered by a loose and unhinged hatch cover. Horizon Lines seems to argue that the hatch was entirely open.  Any dispute on this point is not material to the present motion.

## II.  DISCUSSION

### A.    Plaintiff's Objective on This Motion

While of course the question is for the jury, it seems clear enough from the present record that Horizon Lines is liable *in personam* and the HORIZON CONSUMER liable *in rem* to Johnson for providing him with an unsafe place to work.  The main deck space between the 7 and 8 hatches, where Johnson had to place his ladder to ascend to the second tier of containers, was unsafe because the smaller hatch leading to the tunnel below was uncovered.  This is a common sense conclusion, requiring no particular expertise.  The vessel's witnesses have testified that the practice was to leave this hatch covered and dogged down while she was in port. The reason why is obvious: it is dangerous to have an open hatch on a deck where work is going on.  Indeed, a photograph of the hatch cover in question, in a closed position during a joint examination on board the vessel after the accident, shows that the yellow surface of the hatch cover displays the instructions, in large red capital letters: "KEEP DOGGED CLOSED. KEEP CLOSED IN PORT."  The decks of ships are

3

busy places.  Seamen, longshoremen, and others come and go.  The safe procedure, reflected by these dramatically displayed instructions, is to keep the hatches closed while the vessel is in port, unless it is necessary to open them for the handling of cargo or giving the crew access to below-deck spaces.

But these same circumstances may very well lead the jury to the conclusion that Johnson's own negligence contributed to his injuries, resulting in application of "the longstanding maritime doctrine of comparative fault," *Fuszek v. Royal King Fisheries, Inc.*, 98 F.3d 514, 515 (9th Cir. 1996). Johnson seeks by this motion for partial summary judgment to take any contributory negligence on his part out of the case, and with it any reduction of his damages based on comparative fault.

**B.    Standard of Review**

Johnson moves for partial summary judgment on liability under Fed.R.Civ.P. 56.  Pursuant to Rule 56, summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *SCS Communications, Inc. v. Herrick Co.*, 360 F.3d 329, 338 (2d Cir. 2004).

A material fact for Rule 56(c) purposes is one that would "affect the outcome of the suit under the governing law," and a dispute about a material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty /Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**C.    Plaintiff's Theory of the Case**

According to Johnson's theory of the case, the governing law is found in two U.S. Coast Guard regulations promulgated under statutory authority.  Johnson contends that Horizon Lines'

4

violations of those regulations caused his injuries.

It is well established that "an employer's violation of a safety statute that was designed to protect its employees precluded the district court, sitting in admiralty, from considering the comparative fault of the injured employee-claimant." *Fuszek v. Royal King Fisheries, Inc.*, 98 F.3d 514, 517 (9th Cir. 1996) (citing and following *Roy Crook & Sons, Inc. v. Allen*, 778 F.2d 1037 (5th Cir. 1985)). In *Fuszek* the Ninth Circuit concluded:

> [W]e hold that the district court erred by reducing Fuszek's award for comparative negligence. The ship was in unexcused violation of a Coast Guard safety regulation that was designed not only to protect members of the class to which Fuszek belonged, but also to prevent the type of injury he sustained.

*Id*. The Ninth Circuit's decision in *Fuszek* also approved and followed another Fifth Circuit decision, *Smith v. Trans-World Drilling Co.*, 772 F.2d 157, 160 (5th Cir. 1985), which held that a regulatory violation could amount to negligence *per se* if a plaintiff proved five elements:

> (1) a violation of Coast Guard regulations; (2) the plaintiff's membership in the class of intended beneficiaries of the regulations; (3) an injury of a type against which the regulations are designed to protect, (4) the unexcused nature of the regulatory violation, and (5) causation.

(cited and quoted in *Fuszek* at 98 F.3d 517).

While the Second Circuit does not appear to have directly addressed the effect upon a shipowner's violation of a Coast Guard safety regulation upon the comparative negligence doctrine, in *Jones v. Spentonbush-Red Star Co.*, 155 F.3d 587, 594-95 (2d Cir.1998), the court indicated its agreement with the Ninth Circuit's holding in *Fuszek*. *Jones* involved an injury to a deckhand on a tugboat caused by her owner's violation of an Occupational Safety and Health Administration (OSHA) regulation. The Second Circuit noted that "OSHA regulations apply to working conditions

aboard ships not inspected by the Coast Guard," and that because the tug "was a local, uninspected

tugboat, it was subject to OSHA regulations."  The plaintiff claimed that defendant's OSHA violation

"precludes any reduction in a damage award for comparative fault," relying upon *Kernan v. American*

*Dredging Co.*, 355 U.S. 426 (1958), in which a seaman lost his life as the result of his employer's

violating a Coast Guard regulation requiring the placing of open-flame kerosene lamps at a specified

height above the water.  The Second Circuit, rejecting plaintiff's claim, refused to equate the violation

of a Coast Guard regulation with an OSHA violation for the purpose of precluding comparative

negligence.  The Court of Appeals' reasoning is instructive:

> The Ninth Circuit in *Fuszek v. Royal King Fisheries, Inc.*, expressly
> held that a violation of a Coast Guard regulation bars a finding of
> comparative negligence on plaintiff's part.  Moreover, the *Kernan*
> Court's decision to afford seamen all the rights granted to railroad
> workers by the Federal Employers' Liability Act would include a bar
> against comparative negligence for violations of statutes enacted for
> the safety of employees.
>
> In contrast to the defendants in *Kernan* . . . and *Fuszek*, however,
> Spentonbush did not violate a Coast Guard violation or maritime
> statute.  Instead, it violated an OSHA regulation.  This distinction in
> the source of defendant's statutory duty is key to this appeal.  Unlike
> Coast Guard regulations and maritime statutes that are specifically
> aimed at shipping activities, Jones relies on a general workplace safety
> regulation to attain the same results in a maritime context.  We do not
> think it was Congress' purpose for the Occupational Safety and Health
> Act to have such an all-encompassing effect.

*Id*. at 594-95.[1]  Unlike the "local, uninspected tugboat" in *Jones*, the ocean-going HORIZON

---

[1]  I would add that it was not just the Supreme Court in the *Kernan* case that extended the
benefits of the Federal Employers' Liability Act (FELA), covering railroad workers, to seamen.
The Jones Act, pursuant to which plaintiff at bar brings his action, provides that any seaman
suffering injury in the course of his employment may maintain an action for damages at law "and
in such action all statutes of the United States modifying or extending the common-law right or
remedy in cases of personal injury to railway employees shall apply."  46 U.S.C. § 688(a).  It has
long been recognized that the Jones Act extends FELA benefits to seamen.  FELA specifically

CONSUMER in the case at bar is an inspected vessel and subject to Coast Guard regulations.

It seems to me plain enough from its reasoning in *Jones* that the Second Circuit would follow the Ninth and Fifth Circuits in concluding that a shipowner's violation of a Coast Guard safety regulation precludes comparative negligence if the violation caused a seaman's injury.  In any event, no authority in this circuit precludes me from following the reasoning of those circuits, and I do so.

However, to succeed on this motion and preclude comparative negligence, Johnson must show that Horizon Lines violated a specific safety requirement contained in a Coast Guard regulation.  I turn to the regulations upon which this motion depends.

**D.     The Regulations**

Johnson asserts that his injuries were caused by Horizon Lines' violations of two regulations promulgated by the Coast Guard pursuant to statutory authority.  Those regulations are found at 46 C.F.R. § 92.25-15 and 33 C.F.R. § 96.230.  These regulations constitute the governing law on this motion for partial summary judgment.  I consider them in turn.

**1.     46 C.F.R. § 92.25-15**

46 C.F.R. § 92.25-15, captioned "Guards in dangerous places," provides in its entirety:

> (a)  Suitable hand covers, guards, or rails shall be installed in way of all exposed and dangerous places such as gears, machinery, etc.

Although the section begins with the designation "(a)," there is no subsection (b) or any other provisions in § 92.25-15.

---

precludes a holding of an employee's contributory negligence "in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the  injury . . . of such employee."  45 U.S.C. § 53.  The Jones Act was amended in October 2006, *see* 46 U.S.C. § 30104, but the substance of the prior statute was not changed, and in any event this case, occurring in 2004, is governed by the principles discussed in text and this footnote.

The Coast Guard promulgated 46 C.F.R. § 92.25-15 pursuant to authority Congress delegated in 46 U.S.C. § 3306, which provides in pertinent part that "the Secretary[2] shall prescribe necessary regulations to ensure":

> the proper execution of, and to carry out, this part in the most effective manner for --
>
> (1) the design, construction, alteration, repair, and operation of those vessels,[3] including superstructures, hulls, fittings, equipment, appliances, propulsion machinery, auxiliary machinery, boilers, unfired pressure vessels, piping, electrical installations, and accommodations for passengers and crew . . .

46 U.S.C. § 3306(a). § 92.25-15 is included in Subchapter I of the Coast Guard Regulations, which apply to "Cargo and Miscellaneous Vessels."

46 C.F.R. § 92.25-15 is one of three mandatory regulations included in Subpart 92.25, which is captioned "Rails and Guards."  The other two are § 92.25-5, captioned "Where rails required," which provides that "[a]ll vessels shall have efficient guard rails on decks and bridges," and gives detailed instructions with respect to the height of rails or bulwarks from the deck, how many "courses" a rail must have, and other requirements; and § 92.25-10, captioned "Storm rails," which provides that:

> On vessels in ocean and coastwise service, suitable storm rails shall be installed in all passageways and at the deckhouse sides where persons on board might have normal access.  Storm rails shall be installed on

---

[2] This reference is to the Secretary of the Department within which the United States Coast Guard operates, currently the Department of Homeland Security, to which "the authorities, functions, and assets of the Coast Guard" were transferred in 2002.  *See* 6 U.S.C. § 468(b).  The Coast Guard promulgated 46 C.F.R. § 92.25-15 in 1969, when it was operating within a different Department of the executive branch of government.

[3] This reference is to "vessels subject to inspection."  46 U.S.C. § 3306(a).  The HORIZON CONSUMER was subject to Coast Guard inspection.

both sides of passageways which are 6 feet or more in width.[4]

In the case at bar, Johnson contends that § 92.25-15 applies to an open hatch, which he characterizes as a "dangerous place[]" within the scope of the regulation, and that Horizon Lines violated the regulation because "[s]uitable hand covers, guards or rails" were not "installed in way" of the open hatch on the main deck of the HORIZON CONSUMER.  Horizon Lines contends that § 92.25-15 does not apply to a vessel's hatches, so that the condition of the hatch on the HORIZON CONSUMER when Johnson fell through it into the below-deck space cannot constitute a violation of the regulation.  For the reasons that follow, I agree with the defendant.

Case law does not determine the proper construction of § 92.25-15.  Defendant's brief says, correctly, that no reported case holds the regulation applies to an open hatch; plaintiff's brief says, equally correctly, that no case holds it does not: no guidance there.  *Fuszek*, the Ninth Circuit case discussed *supra*, held that a shipowner's violation of a comparable Coast Guard regulation[5] precluded comparative negligence.  However, in *Fuszek* it was "undisputed that Fuszek was injured by exposed machinery [a fish processing machine] lacking a suitable hand cover," 98 F.3d at 516-17, and so the regulation clearly applied.

In *Spencer v. Sea-Land Service, Inc.*, No. 98 Civ. 2817, 1999 WL 325528 (S.D.N.Y. May 21, 1999), the plaintiff seaman was injured when a crank, inserted into the machinery of a gangway winch

---

[4] There are two other provisions in Subpart 92.25: §§ 92.25-1 and 92.25-90.  These are concerned solely with the application of the regulations contained in the Subpart to particular vessels, depending upon the year a vessel was constructed.

[5] The regulation in *Fuszek* was 46 C.F.R. § 28.215, which provides in part that "[s]uitable hand covers . . . must be installed in way of machinery which can cause injury to personnel[.]" 98 F.3d at 517 n.3.  This regulation is found in Part 28 of 46 C.F.R., which contains "Requirements for Commercial Fishing Industry Vessels." a class within which the vessel in *Fuszek* fell.

for manual operation, spun "wildly" when the machinery was turned on and struck plaintiff's leg. Plaintiff moved for partial summary judgment on the ground that defendant had violated 46 C.F.R. § 92.25-15 and consequently comparative negligence was precluded. Judge Dolinger denied the motion, stating that he was "not persuaded, on the basis of the evidence now proffered by the plaintiff, that the use of the crank in this manner constituted a violation of the cited Coast Guard regulation," and consequently was "not prepared at this stage to preclude defendant from asserting a defense of comparative negligence." 1999 WL 325528, at *1. However the case eventually came out, the injury was clearly caused by the vessel's machinery, which allowed plaintiff to invoke the regulation.

Defendant relies upon *Loehr v. Offshore Logistics, Inc.*, 691 F.2d 758 (5th Cir. 1982), in which a seaman was injured when he fell through an open hatch. The Fifth Circuit held that the plaintiff was not entitled to a ruling of negligence *per se*, reasoning in part that "[w]e could find no applicable Coast Guard regulations pertaining to open hatches at the time of the accident," *id*. at 761. Defendant seizes upon that language, but plaintiff's reply brief argues persuasively that the vessel in question was not a cargo vessel covered by the regulations in Subchapter I of the 46 C.F.R. regulations, and so 46 C.F.R. § 92.25-15 would not have been applicable in any event. *Loehr* furnishes no guidance in construing that regulation.

The briefs of counsel also discuss *Falconer v. Penn Maritime, Inc.*, 397 F.Supp. 2d 68 (D. Me. 2005), an action brought by a seaman who fell through an open hatch. Plaintiff contended that the defendant shipowner's violation of several regulations, including 46 C.F.R. § 92.25-15, constituted negligence *per se* and precluded comparative fault. The district court held *in limine* that the tug VALIANT, on which plaintiff was working when injured, "is an 'uninspected vessel' as opposed to an 'inspected vessel' subject to comprehensive Coast Guard Regulations. . . . The Coast Guard

regulations plaintiff claims Penn violated are, therefore, inapplicable to VALIANT and to this case." 397 F.Supp. 2d at 71 n.3.  In the case at bar, the HORIZON CONSUMER is an inspected vessel and the Coast Guard regulations, including § 92.25-51, apply to her, but the *Falconer* decision says nothing about how that regulation should be construed.[6]

I need not discuss all the cases cited in the briefs of counsel.  They do not answer the core question presented by Johnson's motion, namely, whether 46 C.F.R. § 92.25-15 applies to a dangerous condition created by an open hatch on the deck of an inspected vessel.  To answer that question one must, as in all cases requiring the construction of documents, look first to the words that were used.

Standing alone, 46 C.F.R. § 92.25-15 is not a model of clarity.  As noted *supra*, the regulation provides: "Suitable hand covers, guards or rails shall be installed in way of all exposed and dangerous places such as gears, machinery, etc."  This is sloppy draftsmanship.  The use of "such as" and "etc." inevitably invite the differing constructions advanced by the parties: application of the regulation to any "dangerous place" on a vessel (plaintiff's broad construction) or only to machinery (defendant's narrow construction).  The use of "etc." is particularly egregious: it is lazy and imprecise shorthand where clarity and precision were needed, the equivalent of that current linguistic abomination "whatever."

However, aids to construction are available to the Court.  The Court considers "the context in which a particular word occurs" because under the maxim *noscitur a sociis*, "a word is known by

---

[6]  The district court in *Falconer* went on to hold that the defendant's violation of an OSHA regulation would not justify a finding of negligence *per se* or the preclusion of comparative negligence.  That holding is consistent with the Second Circuit's holding in *Jones*, 155 F.3d at 587.

the company it keeps." *Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006).  That canon of construction is useful in construing § 92.25-15 because of the particular regulatory company that regulation keeps. § 92.25-15 is one of three mandatory regulations in Subpart 92.25, each of which requires that a particular safety device be erected or "installed" in a particular area of a vessel. Vessels "shall have" guard rails on decks and bridges, § 92.25-5; storm rails must be "installed" in passageways and at the deckhouse sides, § 92.25-10; and hand covers, guards, or rails must be "installed" in "exposed and dangerous places such as gears, machinery, etc.," §92.25-15. These regulations quite clearly contemplate permanent fixtures (the noun for the verb "install" is "installation").  Permanent fixtures are required because their absence would render the location in question unsafe.  The deck of a ship is inherently unsafe without guard rails along its sides.  An internal passageway in a ship rolling and pitching in a storm is inherently unsafe without storm rails to hold on to.  A ship's machinery, gears, and other mechanical devices, when operating, running, turning, cutting, lifting, lowering, or whatever the machine's function may be, are inherently unsafe without hand covers, guards or rails to protect a seaman from being caught in the moving parts.

This is the company that § 92.25-15 keeps; but plaintiff's attempt to apply the regulation to any dangerous place on a vessel puts it in quite different company.  The present case illustrates the problem.  An open hatch is not inherently and always dangerous (although it is never a good idea to fall into one).  A vessel must open her hatches to load or discharge cargo or allow for access to below-deck spaces.  A hatch unnecessarily left open creates a dangerous place for those moving about the deck (or a seaman like Johnson, who apparently placed a ladder close to an open hatch and then climbed up and down it).  However, the danger created by an open hatch is avoided not by a permanent or installed device, but by the simple expedient of covering the hatch.  A ship hatch's

safety device is its liftable, portable, non-permanent, non-installed hatch cover.  One of the safest places imaginable on a ship is sitting on a well placed, dogged-down midship's hatch cover.

So I have decided to leave 46 U.S.C. § 92.25-15 in the company it keeps in the regulatory scheme, and conclude that this regulation has no application to this case.  Stated otherwise, the condition of the hatch when Johnson fell through it does not constitute a violation by Horizon Lines of § 92.25-15.  Accordingly, the regulation does not form the basis for a holding that Horizon Lines was negligent *per se*, or that the doctrine of comparative fault does not apply to the case.[7]

**2.      33 C.F.R. § 96.230**

33 C.F.R. § 96.230 is included in Subpart B of 33 C.F.R. Ch. 1, captioned "Company and Vessel Safety Systems."  Subpart B's "purpose" is described in § 96.200:

> This subpart establishes the minimum standards that the safety management system of a company and its U.S. flag vessel(s) must meet for certification to comply with the requirements of 46 U.S.C. 3201-3205 and Chapter IX of SOLAS.

In 46 U.S.C. §§ 3201-3205, Congress brought the United States into conformity with the International Convention for the Safety of Life at Sea, 1974 ("SOLAS"), and the International Safety Management Code ("ISIM") promulgated under SOLAS.  46 U.S.C. § 3203(a) directs the Secretary

---

[7] Defendant also relies upon the maxim *ejusdem generis* in construing § 92.25-15. "*Ejusdem generis* is the statutory canon that where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  *Wojchowski v. Daines*, 498 F.3d 99, 108 n.8 (2d Cir. 2007) (citation and internal quotation marks omitted).  *Ejusdem generis* does not squarely apply to § 92.25-15, since the regulation's general words ("all exposed and dangerous places") precede the specific words ("gears, machinery, etc.") rather than *vice versa*. Nonetheless, the English phrase "such as" in the regulation may without difficulty be read as having the same effect as the Latin phrase *ejusdem generis*; and in any event, the broader maxim *noscitur a sociis*, of which *ejusdem generis* is one of several applications, is clearly applicable as an aid to the construction of § 92.25-15.

to "prescribe regulations which establish a safety management system for responsible persons and vessels to which this chapter applies." 33 C.F.R. §§ 96.200-96.390 contain the regulations promulgated by the Coast Guard in obedience to that statutory command.

Johnson contends that Horizon Lines violated § 96.230. That section is captioned with a question: "What objectives must a safety management system meet?" The section then gives the answer. It provides in part:

> The safety management system must:
>
> (a) Provide for safe practices in vessel operation and a safe work environment onboard the type of vessel the system is developed for;
>
> (b) Establish and implement safeguards against all identified risks; ....

Plaintiff's theory on this motion is that the condition of the open hatch through which he fell establishes violations by Horizon Line of these two regulatory requirements, with the result that the defendant should now be adjudicated as negligent as a matter of law, and the doctrine of comparative negligence should be precluded.

The briefs of counsel do not contain any federal cases construing or applying § 96.230 in an action by a seaman (or anyone else) for personal injuries on board a vessel. Nor has the Court's research discovered such a case. Two state court decisions refer to this section. In *Kyles v. Eastern Car Liners, Inc.*, 598 S.E.2d 353 (Ga. Ct. App. 2004), a Georgia appellate court reversed a summary judgment in favor of the defendant shipowner in an action brought by a longshoreman who was injured while the vessel he was loading rolled and caused bagged cargo to fall on him. The appellate court held that 33 C.F.R. § 96.230 implemented the requirements of the International Safety Management Code as part of its regulations, and that a factual issue requiring trial existed as to

14

whether the defendant had violated subsections (a) and (b).  The court concluded: "Thus, a jury issue exists as to whether the ISMC was violated and whether that proximately caused Kyle's injuries."  *Id*. at 358.  In *Caraska v. State Department of Transportation*, No. 57814-6-I, 2007 WL 2473456 (Wash. Ct. App. Sept 4, 2007), a Washington appellate court reversed the trial court's dismissal of a ferry crew member's Jones Act claim against state ferry authority for injuries he received at the hands of an obviously drunken and disturbed passenger who shoreside staff had allowed to board the vessel.  The court observed that the ferry authority had adopted a Safety Management System policy in obedience to § 96.230(b), and that a violation of that policy could impose Jones Act liability.  *Id*. at *4 n.6.  The case was remanded to the trial court for further consideration.  While these state cases suggest that the standards of conduct described in § 96.230 may support a finding by a jury or trial court that a shipowner was negligent, they furnish no authority for holding of negligence *per se* or the preclusion of comparative fault.

I conclude that 33 C.F.R. § 96.230 cannot form the basis for a holding of negligence *per se* or the preclusion of comparative fault in a seaman's action for personal injury under the Jones Act and the general maritime law.  Unlike § 92.25-15 and the other precise regulations with respect to safety structures, § 96.230 is cast in general terms which restate principles already well established by American case law.[8]  Plaintiff's brief at 2 n.2 quotes Judge Weinfeld's definition of the "seaworthiness" of a vessel in *Rodriguez v. Coastal Ship Corp.*, 210 F.Supp. 38, 43 (S.D.N.Y. 1962): "The ultimate question is – was she reasonably fit to permit libelant to perform his task with reasonable safety?"  Those are the general criteria reiterated by § 96.230.  One can discern, in the

---

[8] This distinction is illustrated by *Fuszek* and *Smith*.  In *Fuszek*, the plaintiff seaman caught his hand in unguarded machinery and in *Smith*, the seaman fell from an exhaust pipe which lacked railing to hold on to (seamen used the pipe as a passageway on a drilling rig).

statute authorizing this regulation, a desire by the Congress to participate with other maritime nations in achieving the salutary goals of SOLAS and the ISIM. But I do not find in the statute or the regulations promulgated under it a congressional intent to bring about a sea change in the long-established rules of law which govern liability and its allocation in cases tried under the Jones Act and the general maritime law in the federal courts.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment on liability is denied. The questions of defendant's negligence, plaintiff's contributory negligence, causation, and damages are for the jury, which the Court will instruct in a manner consistent with this opinion.

It is SO ORDERED.

Dated: New York, New York

      October 19, 2007

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

16